UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


NO. 1:11-md-02242-RWZ


IN RE: PROGRAF ANTITRUST LITIGATION


<u>ORDER</u>

May 3, 2013


ZOBEL, D.J.

The parties are entrenched in an ongoing discovery dispute regarding

documents that have been withheld or redacted by defendant Astellas Pharma US, Inc.

("Astellas") on the basis of the attorney-client privilege and work product doctrine.

Following several unsuccessful attempts to resolve the matter – including an internal

review by Astellas of a sampling of its own redacted documents[1] – plaintiffs filed a

motion for appointment of a special master (Docket # 131) per Fed. R. Civ. P. 53 to

assess Astellas's claims of privilege by reviewing a portion of the redacted and

withheld documents.  Astellas opposes the appointment of a special master as

unwarranted.

At a hearing on March 14, 2013, in order to determine whether a special master

is needed, I requested that Astellas submit a set of rules delineating how to address the

---

[1] Of the 4,381 documents that it had redacted for attorney-client and/or work product purposes, Astellas reviewed 427 (or approximately 10%) randomly selected documents.  Astellas identified 194 documents that had been incorrectly redacted based on one recurring substantive error.  An additional 30 documents (approximately 7% of the remaining sample set) were found to contain incorrect or excessive redactions.  Astellas then conducted further review of an additional 187 randomly selected documents and identified 13 (approximately 7%) with improper redactions. Docket # 116 at 2-3.

applicability of privilege to three relevant categories of documents: communications involving third parties, communications in which an individual is speaking as a business executive rather than as a lawyer, and communications between non-lawyers.  Astellas filed its proposed rules, along with a small sampling of documents for review *in camera*, on March 22, 2013 (Docket ## 191-192).  Plaintiffs submitted their response (Docket # 196) on March 29, and Astellas filed, with leave from the court, a supplemental reply (Docket # 208) on April 12.

After reviewing the parties' submissions, I have composed a set of rules, attached hereto as Appendix A, to guide the assessment of privilege and work product in this case.  Astellas shall apply these rules to the documents currently withheld or redacted and produce additional materials to plaintiffs in accordance therewith.  In the event that the parties encounter serious disagreement regarding the application of the rules and are unable to reach a satisfactory resolution by May 17, 2013, the parties shall notify the court, and I will appoint a special master to review initially a limited sampling of disputed documents chosen by plaintiffs.[2]

On a final note, it appears from my review of the submitted materials that Astellas has been overly conservative in its application of privilege.  To encourage Astellas to be more freehanded in its production, I institute a "safe harbor" policy with respect to this particular stage of discovery: if Astellas produces material which it later determines, in good faith, should have been withheld or redacted, it will enjoy the

---

[2] I welcome the input of the parties to the extent they can agree on whom to appoint and how to structure compensation.  If the parties cannot agree, I will select an appropriate special master.

benefit of retracting that decision wrongly made without waiving the privilege.

I reserve on plaintiffs' motion for appointment of a special master (Docket # 131)

until the parties report the results of their efforts pursuant to this order.

SO ORDERED.


_____May 3, 2013_____          _____/s/Rya W. Zobel_____
DATE                                  RYA W. ZOBEL
                                      UNITED STATES DISTRICT JUDGE

## APPENDIX A

Astellas, as the party invoking attorney-client privilege and work product protection, bears the burden of showing that either applies, Vicor v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012), and must do so with a sufficient level of specificity, Borase v. M/A COM, Inc., 171 F.R.D. 10, 14 (D. Mass. 1997).  With respect to the specific contours of the present dispute:

**(1)** Communications from Astellas's in-house counsel Catherine Wertjes to outside counsel made, in confidence, for the purpose of seeking or receiving legal advice regarding the drafting and filing of the citizen petition are protected by the attorney-client privilege.  See United States v. Mass. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997).  Communications from outside counsel to Wertjes are also entitled to the privilege to the extent that they relate to Astellas's confidential communications in seeking legal advice.  See State of Maine v. U.S. Dept. of Interior, 298 F.3d 60, 71 (1st Cir. 2002).

**(2)** Communications from Astellas employees to Wertjes made, in confidence, for the purpose of seeking or receiving legal advice regarding the drafting and filing of the citizen petition are protected by the attorney-client privilege, provided that (a) Wertjes is functioning in her capacity as an attorney; and (b) the employees involved or included in such communications fall within the scope of the privilege as described in Upjohn v. United States, 449 U.S. 383 (1981).  Relevant factors include whether those employees were corporate officers or "acting at the direction of corporate superiors"; "such communications were within the employees' corporate duties"; " the employees were sufficiently aware that information was sought from them in order to obtain legal

advice"; and "the communications were considered confidential when made and were thereafter kept confidential by the corporation."[3] <u>Command Transp., Inc. v. Y.S. Line (USA) Corp.</u>, 116 F.R.D. 94, 95-96 (D. Mass. 1987) (citing <u>Upjohn</u>, 449 U.S. at 383). Communications from Wertjes to Astellas employees – subject to the same factors listed above – are also entitled to the privilege to the extent that they relate to legal advice.  It must be emphasized that only Wertjes's communications related to rendering *legal* advice are protected.  Any communications by Wertjes pertaining to business matters, including the petition's factual and technical content, objective merit, and timing of filing, are not privileged.  There is no presumption that the privilege either arises or is waived merely as a result of the number of people involved in a communication.

(3) Communications between Astellas's employees that discuss or relay counsel's legal advice related to the citizen petition are privileged to the extent that the employees are in a "need to know" position or bear some responsibility for the subject matter underlying the consultation.  <u>See, e.g.</u>, <u>Southeastern Pennsylvania Transp. Authority v. Caremarkpcs Health, L.P.</u>, 254 F.R.D. 253, 262 (E.D. Pa. 2008); <u>Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.</u>, 160 F.R.D. 437, 442 (S.D.N.Y. 1995).

(4) Drafts of the citizen petition shared between counsel and Astellas employees that were prepared by, or at the direction, request, or advice of Wertjes or outside

---

[3] While these factors are not necessarily dispositive, they get at the heart of the Supreme Court's rationale for applying the privilege in <u>Upjohn</u>: the attorney's *need* to communicate with the employees in rendering legal advice and services to the corporation.

counsel are privileged.  See In re Grand Jury Subpoena (Legal Servs. Ctr.), 615 F.

Supp. 958, 965 (D. Mass. 1985).  Cf. Ergo Licensing, LLC v. Carefusion 303, Inc., 263

F.R.D. 40, 44-45 (D. Me. 2009).  However, to the extent that any drafts of the petition

were shared with outside parties, such as public relations firms, the privilege is deemed

waived with respect to those particular drafts.  Mass. Inst. of Tech., 129 F.3d at 684-

85.

     **(5)** It does not appear that Astellas's Senior Director Michael Ruggiero

functioned in the capacity of counsel in providing legal advice to Astellas with respect

to the drafting and filing of the citizen petition.  Therefore, such communications and

materials being withheld or redacted by Astellas on the sole basis of Ruggiero's alleged

status as counsel are not privileged and should be produced.  Borase, 171 F.R.D. at

14-15.  To the extent that Astellas can demonstrate that Ruggiero did act as a lawyer in

giving legal advice on matters other than the citizen petition, those communications

may be privileged.

     **(6)** Communications between either Astellas or outside counsel and employees

of public relations firms Hill & Knowlton and Fleishman-Hillard are neither privileged

nor protected work product.  Astellas has not shown that communications with either

firm were necessary, or at least highly useful, for the rendering of legal advice.

Cavallaro v. United States, 284 F.3d 236, 247 (1st Cir. 2002).  Rather, it appears that

both Hill & Knowlton and Fleishman-Hillard provided Astellas with standard public

relations services related to the filing and outcome of the citizen petition and any

subsequent business or media fallout.  Moreover, even if the firms provided public

relations advice or documents bearing upon potential litigation over the citizen petition, such materials fall outside the scope of work-product protection, which is intended "to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." Calvin Klein Trademark Trust v. Wachner, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

**(7)** Draft versions of a declaration submitted by Heather Goodman of the consulting firm Two Labs Marketing to the D.C. federal district court in support of Astellas's lawsuit against the FDA, as well as communications between Goodman and Astellas or outside counsel regarding the content of and revisions to that declaration, are protected by the work-product doctrine. See Ideal Elec. Co. v. Flowserve Corp., 230 F.R.D. 603, 609 (D. Nev. 2005); Randleman v. Fid. Nat. Title Ins. Co., 251 F.R.D. 281, 285 (N.D. Ohio 2008). The results of paralegal Marilynn Whitney's monitoring of the generic tacrolimus market, conducted at the request of Wertjes and outside counsel, is work product and remains protected even if shared with Goodman and Rich Wartel of Two Labs Marketing, a "friendly party." Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 125 F.R.D. 578, 587 (N.D.N.Y. 1989). See also Fidelity Intern. Currency A Fund, L.L.C., ex rel. Tax Matters Partner v. U.S., Nos. 05-40151-FDS, 06-40130-FDS, 06-40243-FDS, 06-40244-FDS, 2008 WL 4809032, at *12 (D. Mass. April 18, 2008) ("work-product protection is waived only when material is disclosed 'in a way inconsistent with keeping it from an adversary.'") (quoting Mass. Instit. of Tech., 129 F.3d at 687).

4

**(8)** Astellas has not shown how its communications with Putnam Associates, an outside strategy consulting firm, while relevant to business matters, were necessary or highly useful for counsel to render legal advice to Astellas.  <u>Cavallaro</u>, 284 F.3d at 247. Thus, such communications are not privileged.  However, redactions made for non-relevance (e.g., regarding Astellas products other than Prograf) may remain.